# In the United States Court of Federal Claims

No. 15-1297C
(Filed: May 27, 2016)

```
*************************************
DOUGLAS G. BROWN et al., For       *
Themselves and As Representative of a  *
Class of Similarly Situated Persons,   *
                                   *      Rails-to-Trails; Motion to Certify a Class
            Plaintiffs,            *      Action; Failure to Satisfy All Requirements
                                   *      of RCFC 23; Joinder Not Impracticable;
v.                                 *      Wal-Mart Stores, Inc.
                                   *
THE UNITED STATES,                 *
                                   *
            Defendant.             *
*************************************
```

J. Robert Sears, St. Louis, MO, for plaintiffs.

Joanna K. Brinkman, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**

**SWEENEY**, Judge

In this Rails-to-Trails case, plaintiffs own real property in Cleveland County, North Carolina, adjacent to a railroad right-of-way. They contend that the United States, by authorizing the conversion of the railroad right-of-way into a recreational trail pursuant to the National Trail Systems Act ("Trails Act"), took their property without paying just compensation in violation of the Fifth Amendment to the United States Constitution. Plaintiffs bring suit in this court on behalf of themselves and those similarly situated, and now move to certify the case as a class action. For the reasons set forth below, the court denies plaintiffs' motion.

## I. BACKGROUND

The Trails Act, as amended, provides for the preservation of "established railroad rights-of-way for future reactivation of rail service" by authorizing the interim use of such rights-of-way as recreational and historical trails.[1] 16 U.S.C. § 1247 (2012). This process is referred to as "railbanking," and is overseen by the Surface Transportation Board ("Board"), id., the federal

---

[1] The court derives this background from the relevant statutes and regulations, the complaint, the amended complaints, the court's docket, and the exhibits attached to the parties' briefs in support of and opposition to plaintiffs' motion to certify a class action.

agency with the exclusive jurisdiction to regulate "the construction, acquisition, operation, abandonment, or discontinuance" of most railroad lines in the United States, 49 U.S.C. § 10501(b) (2012).

Before railbanking can occur, the railroad company must seek to abandon its line, either by initiating abandonment proceedings with the Board pursuant to 49 U.S.C. § 10903, or by requesting that the Board exempt it from such proceedings pursuant to 49 U.S.C. § 10502. While considering the railroad company's abandonment application or exemption request, the Board will entertain protests and comments from interested third parties, including requests from interested third parties for the interim use of the railroad line as a trail pursuant to 16 U.S.C. § 1247(d).  49 C.F.R. §§ 1152.25, 1152.29(a) (2014).

If an interested third party submits a trail use request to the Board that satisfies the requirements of 16 U.S.C. § 1247(d), the Board makes the necessary findings pursuant to 49 U.S.C. § 10502(a), and the railroad company agrees to negotiate a trail use agreement, the Board will issue a Notice of Interim Trail Use or Abandonment ("NITU").  Id. § 1152.29(b), (d).  The effect of the NITU is to "[p]ermit the railroad to discontinue service, cancel any applicable tariffs, and salvage track and materials, consistent with interim trail use and rail banking . . . ; and permit the railroad to fully abandon the line if no agreement is reached 180 days after the NITU is issued, subject to appropriate conditions . . . ."  Id. § 1152.29(d)(1).  The Board will entertain requests to extend the 180-day deadline to enable further negotiations.  If the railroad company and the interested third party execute a trail use agreement, then abandonment of the railroad line is stayed for the duration of the agreement.  Id. § 1152.29(d); 16 U.S.C. § 1247(d).  If no trail use agreement is executed, the railroad company is permitted to fully abandon the line.  49 C.F.R. § 1152.29(d).  If the railroad company notifies the Board that it has fully abandoned the line, see id. § 1152.29(e)(2), the Board is divested of jurisdiction over the abandoned railroad line and "state law reversionary property interests, if any, take effect."  Caldwell v. United States, 391 F.3d 1226, 1228-29 (Fed. Cir. 2004).

On August 4, 2015, the Board issued a NITU pertaining to four segments of a railroad right-of-way in North Carolina over which Norfolk Southern Railroad Company ("Norfolk Southern") formerly operated its railroad.  These four segments are situated between milepost SB 144.55 and milepost SB 154.59, between milepost SB 158.10 and milepost SB 160.00, between milepost SF 384.6 and milepost SF 407.4, and between milepost SB 144.55 and milepost SB 141.35.

Three days after the Board issued the NITU, four individuals–Otis Mull Meacham, Montrose Meacham Ballard, Charles Jr. Shivers, and Rhonda K. Shivers–filed suit in this court alleging that the NITU effected a taking under the Fifth Amendment for which they were not paid just compensation.  The case was captioned Meacham v. United States, No. 15-843L.  An amended complaint was filed the following month; several plaintiffs were added to the suit and the caption of the case changed to Brooks v. United States, No. 15-843L.  In November 2015, as publicized in an article appearing in the local newspaper, the attorney representing the plaintiffs in Brooks held two town hall meetings to explain the suit to potentially affected residents.  A second article, published two days later, included the attorney's website address for those who

wanted additional information regarding the suit.  Eventually, on February 9, 2016, a second amended complaint was filed in <u>Brooks</u> that named 151 plaintiffs.

In the meantime, on November 2, 2015, four individuals filed the instant suit, on behalf of themselves and other similarly situated individuals, contending that the August 4, 2015 NITU effected a taking of their property for which they were not paid just compensation in violation of the Fifth Amendment.  Fourteen additional plaintiffs were named in a February 23, 2016 amended complaint and two additional plaintiffs were named in a May 19, 2016 second amended complaint.[2]  In their second amended complaint, plaintiffs allege that Norfolk Southern owned an easement for railroad purposes underlying the four segments of the railroad right-of-way covered by the NITU; claim that Norfolk Southern's easement lay across their property; and identify the specific parcels of land encumbered by the purported easement, each of which is located in Cleveland County, North Carolina.  In addition, plaintiffs' attorney asserts via affidavit that Norfolk Southern acquired its easement via condemnation, prescription, and right-of-way deeds, and that the deeds "are all of the same type and have the same or very similar operative language."  Pls.' Ex. A ¶ 16.

Plaintiffs now move to certify the case as a class action pursuant to Rule 23 of the Rules of the United States Court of Federal Claims ("RCFC"), defining the proposed class as:

> All persons who on August 4, 2015, owned an interest in lands constituting part of the railroad corridor or right-of-way on which a rail line was formerly operated by Norfolk Southern Railway Company (NSR), from milepost SB 144.55 to milepost SB 154.50 and from milepost SB 158.10 to milepost [SB] 160.00, in Cleveland County, North Carolina, and who claim a taking of their rights to possession, control and enjoyment of such lands due to the operation of the "rail banking" provisions of the National Trails System Act ("NTSA"), 16 U.S.C. § 1247(d). Excluded from this Class are the owners of land that abut segments of the subject right-of-way that the railroad acquired fee simple to; railroad companies and their successors in interest; [and] persons who have elected to pursue their claims in separate lawsuits against the United States for compensation for the same interests in land.

Pls.' Mot. 1.  The parties have fully briefed the motion and the court deems oral argument unnecessary.

---

[2]  The twenty named plaintiffs in the second amended complaint are Douglas G. Brown, Mary Louise Kelley, Russell Keith, Dara Champion, Jane Billedeaux, Hamrick S R Heirs et al., Susan Baxter King, Linda Kirby Owensby, Tomjack Investments LLC, Wake Chapel Properties LLC, Knalda Wright, Doris B. Bettis, Gene Bettis Family Trust, Evelyn K. Wallace Clark, Shirley K. Clark, Carl R. Porter, Kathern C. Porter, Tube Enterprises, Inc., Charles W. Tull Revocable Trust, and Joseph M. Webb.

## II. DISCUSSION

RCFC 23 describes the requirements for maintaining a class action in the United States Court of Federal Claims ("Court of Federal Claims"):

> (a)  Prerequisites.  One or more members of a class may sue as representative parties on behalf of all members only if:
> > (1)  the class is so numerous that joinder of all members is impracticable;
> > (2)  there are questions of law or fact common to the class;
> > (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> > (4)  the representative parties will fairly and adequately protect the interests of the class.
>
> (b)  Class Actions Maintainable.  A class action may be maintained if RCFC 23(a) is satisfied and if:
> > (1)  [not used];
> > (2)  the United States has acted or refused to act on grounds generally applicable to the class; and
> > (3)  the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
> > > (A)  the class members' interests in individually controlling the prosecution of separate actions;
> > > (B)  the extent and nature of any litigation concerning the controversy already begun by class members;
> > > (C)  [not used]; and
> > > (D)  the likely difficulties in managing a class action.

RCFC 23(a)-(b) (alterations in original).  In other words, a putative class representative must demonstrate:  (i) numerosity–that the proposed class is so large that joinder is impracticable; (ii) commonality–that there are common questions of law or fact that predominate over questions affecting individual prospective class members and that the government has treated the prospective class members similarly; (iii) typicality–that his or her claims are typical of the proposed class; (iv) adequacy–that he or she will fairly represent the proposed class; and (v) superiority–that a class action is the fairest and most efficient method of resolving the suit. Toscano v. United States, 98 Fed. Cl. 152, 155 (2011); Barnes v. United States, 68 Fed. Cl. 492, 494 (2005).  The class action's proponent must satisfy each of the requirements by a preponderance of the evidence.  Messner v. Northshore Univ. HealthSys., 669 F.3d 802, 811 (7th Cir. 2012) (citing Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir. 2008)); see also Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) ("Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule–that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.").

Moreover, "[t]hese requirements are in the conjunctive; hence, a failure to satisfy any one of them is fatal to class certification." Barnes, 68 Fed. Cl. at 494.  The court may certify a class only if, "after a rigorous analysis," it finds that the requirements of RCFC 23 have been met. Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 161 (1982).

Plaintiffs contend that they have satisfied all of the requirements of RCFC 23, while defendant asserts that plaintiffs have not satisfied the numerosity, commonality, typicality, and superiority requirements.  As explained below, the court concludes that the proposed class fails to completely satisfy any of the rule's requirements.

## A. Numerosity

To prevail on their motion to certify a class action, plaintiffs must first satisfy the numerosity requirement.  RCFC 23(a)(1) specifies that a class action is appropriate only if "the class is so numerous that joinder of all members is impracticable[.]"  "'Impracticable does not mean impossible.'"  Jaynes v. United States, 69 Fed. Cl. 450, 454 (2006) (quoting Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993)); see also Fauvergue v. United States, 86 Fed. Cl. 82, 96 (2009) ("The ability to use joinder does not preclude certification."), rev'd on other grounds sub nom. Bright v. United States, 603 F.3d 1273 (Fed. Cir. 2010).  Rather, a putative class representative need only establish that "'it is extremely difficult or inconvenient to join all the members of the class.'"  Jaynes, 69 Fed. Cl. at 454 (quoting 7A Charles Alan Wright et al., Federal Practice and Procedure § 1762 (3d ed. 2005) ("Wright 2005")).  A court must examine the facts of the case to determine whether the numerosity requirement has been satisfied.  Gen. Tel. Co. of the Nw., Inc. v. EEOC, 446 U.S. 318, 330 (1980).  In particular, a court should consider the number of potential class members, the geographic dispersal of the potential class members, and the size of each potential class member's claim.  King v. United States, 84 Fed. Cl. 120, 123-24 (2008); accord Jaynes, 69 Fed. Cl. at 454; 5 James Wm. Moore et al., Moore's Federal Practice ¶ 23.22[1][b] (3d ed. 2012); 7A Charles Alan Wright et al., Federal Practice and Procedure § 1762 (3d ed. 2016) ("Wright 2016").

The number of potential class members is considered to be the most important factor of the numerosity requirement.  King, 84 Fed. Cl. at 124; Fauvergue, 86 Fed. Cl. at 96.  Plaintiffs represent that based on a search of the records maintained by the Cleveland County Tax Administration Department, the proposed class includes 156 potential claimants.  Relying on a statement in King that a proposed class of forty or more members is generally sufficient to satisfy the numerosity requirement, see 84 Fed. Cl. at 124, plaintiffs argue that a proposed class of 156 members is large enough to presumptively render joinder impracticable.  Defendant counters that plaintiffs ignore the fact that in Brooks, another Rails-to-Trails case pending before the court pertaining to the same railroad right-of-way and the same NITU, 151 claimants are proceeding through joinder, and not by a class action.  The similarity in the number of plaintiffs in Brooks and the number of potential class members in this case, defendant contends, establishes that joinder is not impracticable in this case.  In rebuttal, plaintiffs assert that the fact that only 151 of the 307 potential claimants joined the Brooks suit, even after the publicity generated by the town hall meetings and the newspaper articles, demonstrates that joinder is impracticable.  Plaintiffs

further argue that there have been several instances in this court in which a class action, a joinder suit, and individual suits relating to the same NITU have coexisted without difficulty.

Defendant's contentions are more persuasive. It defies common sense to contend, as plaintiffs do, that it is impracticable for 156 claimants to proceed through joinder when, in a case involving the same railroad right-of-way and the same NITU, 151 claimants are, in fact, proceeding through joinder. Indeed, the fact that there are 151 plaintiffs in Brooks demonstrates that a 156-member class is not large enough to create a presumption that joinder is impracticable.[3] Additionally, the failure of all 307 potential claimants to join the Brooks suit reflects only that some potential claimants did not want to pursue a claim; the failure has no bearing on whether joinder is impracticable. Further, although plaintiffs are correct that class actions and joinder suits regarding the same railroad right-of-way and NITU have coexisted in this court on prior occasions, they ignore the salient fact that in all of the examples they cited, the class action was filed first; there was no preexisting joinder suit that might demonstrate that proceeding by joinder was practicable.[4] In short, plaintiffs have failed to demonstrate that the

---

[3] Even had Brooks not been filed, the court would decline plaintiffs' invitation to establish a minimum number of proposed class members that would presumptively render joinder impracticable. Accord Bell v. United States, 123 Fed. Cl. 390, 397 (2015); Singleton v. United States, 92 Fed. Cl. 78, 83 (2010); Jaynes, 69 Fed. Cl. at 454. The court notes, however, that the number of potential class members identified by plaintiffs–156–has been considered to be sufficient to weigh in favor of satisfying the numerosity requirement in other Rails-to-Trails cases. See, e.g., Geneva Rock Prods., Inc. v. United States, 100 Fed. Cl. 778, 788 (2011) ("[T]he putative class comprises approximately 23 members . . . . Though this number is at the smaller end of the spectrum, it is still within the acceptable bounds for class certification."); Douglas R. Bigelow Tr. v. United States, 97 Fed. Cl. 674, 676-77 & n.5 (2011) (concluding that a proposed class that included twenty-five members satisfied the numerosity requirement and noting that, in other Rails-to-Trails cases, the government had stipulated to the certification of class actions with thirty-three, forty-eight, and forty-four class members); Singleton, 92 Fed. Cl. at 84 ("[J]oinder of the estimated 135 potential claimants would entail a sufficient degree of extra difficulty and/or expense that makes it 'impracticable.'"); Fauvergue, 86 Fed. Cl. at 98 (concluding that joinder was impracticable with a proposed class of 150 property owners); King, 84 Fed. Cl. at 124 ("The actual number of members of the class already identified, 152, . . . is likely sufficient to satisfy the numerosity prong by itself.").

[4] Plaintiffs' first example of coexisting suits is Raulerson v. United States, No. 10-193L, and Ingram v. United States, No. 10-463L. Raulerson was filed as a class action on March 31, 2010, and Ingram, the joinder suit, was filed on July 19, 2010. Plaintiffs' second example is Bridgeman v. United States, No. 11-548L, Williams v. United States, No. 15-416L, and McClelland v. United States, No. 15-508L. Bridgeman was filed as a class action on August 30, 2011, Williams, the first joinder suit, was filed on April 24, 2015, and McClelland, the second joinder suit, was filed on May 18, 2015. Plaintiffs' third example is Finch v. United States, No. 12-92L, and Carpenter v. United States, No. 15-415L. Finch was filed as a class action on February 9, 2012, and Carpenter, the joinder suit, was filed on April 24, 2015. Plaintiffs' final

number of members in their proposed class is a factor that weighs in their favor. Although the number of potential class members is the most important factor in the numerosity inquiry, the court examines other relevant factors–the geographic dispersal of the potential class members and the size of each potential class member's claim–to ascertain whether plaintiffs have made a showing that can overcome this significant deficiency.

It is well settled that joinder is less practicable when potential class members are dispersed geographically. Geneva Rock Prods., Inc., 100 Fed. Cl. at 787; King, 84 Fed. Cl. at 124-25. Plaintiffs aver that potential class members are located in nine states,[5] and contend that such a geographic distribution supports the satisfaction of the numerosity requirement. Defendant responds that the geographic distribution of potential class members has little relevance in a Rails-to-Trails case because the facts required to dispose of such a case relate to the property at issue rather than the owners of that property. Plaintiffs, in their reply, recognize that the geographic distribution of potential class members is not a significant factor in the numerosity inquiry, but emphasize that a nine-state distribution is sufficient to tip the scale in their favor. The court agrees with plaintiffs; although the geographic distribution of potential class members is not a heavily weighted factor, the fact that the potential class members identified by plaintiffs reside in nine states does tilt the factor, albeit slightly, in their favor. Accord Geneva Rock Prods., Inc., 100 Fed. Cl. at 788 (finding the numerosity requirement satisfied even though "the putative class members reside[d] in relatively close proximity to one another"); Haggart v. United States, 89 Fed. Cl. 523, 531-32 (2009) ("[Geographic proximity] has been taken into account in such varying ways that it does not often contribute to a particular result. . . . However, the close geographic proximity of potential class members does not by itself preclude class certification.").

"The practical implications of class-member geographical distribution also require consideration of a number of the factors applicable to numerosity: the facility of serving process, the ease of identification, the ease of ascertaining addresses, and the distance between their residences are all fact-specific inquiries that influence the impracticality of joinder." Fauvergue, 86 Fed. Cl. at 97. Plaintiffs aver that they have identified 156 potential class members and their addresses. Given this averment, defendant remarks that plaintiffs fail to explain why certification of a class is a better option than simply inviting these already-identified potential class members to join the suit. Although defendant correctly suggests that plaintiffs' identification of potential class members and their addresses might make joinder more practicable because plaintiffs could

---

example is Haggart v. United States, No. 09-103L, and Smith v. United States, No. 14-387L. Haggart was filed as a class action on February 19, 2009, and Smith, the joinder suit, was filed on May 6, 2014.

[5] For this averment, plaintiffs rely on a spreadsheet submitted with their motion to certify a class action identifying all potential class members. That spreadsheet, however, only contains the potential class members' street addresses, and not the associated cities and states. Nevertheless, the court accepts plaintiffs' averment as true, especially given defendant's failure to challenge it.

easily contact the potential claimants regarding joining the suit, cf. Jaynes, 69 Fed. Cl. at 455, plaintiffs' possession of such information does not preclude the certification of a class action, see Houser v. United States, 114 Fed. Cl. 576, 578-79 (2014).  Rather, plaintiffs' possession of this information "merely means that assembling a class and communicating with its members will be relatively easy . . . ."  Id. at 578; accord id. at 579 ("The greater the ease of soliciting opt-ins [and] communicating with the class, . . . the easier it will be to manage the class.").

        A third factor that bears on the numerosity inquiry is the size of the prospective class members' individual claims, because in circumstances where there are numerous prospective claimants with small claims, a class action allows those individuals to pursue their claims without incurring litigation costs that would overwhelm their potential recoveries.  Geneva Rock Prods., Inc., 100 Fed. Cl. at 787; King, 84 Fed. Cl. at 125; see also 5 Moore et al., supra, ¶ 23.22[1][e] ("Numerosity may be satisfied, on the basis that joinder is likely to be impracticable, if individual class members lack the ability or the motivation to institute individual actions.  For example, if each class members' individual claim involves only a small amount of damages, each class member would be unlikely to file a separate action."); 7A Wright 2016, supra, § 1762 ("A variety of factors, including . . . the size of the individual claims, . . . may contribute to the court's decision under Rule 23(a)(1) in a given case." (footnote omitted)); cf. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617 (1997) (noting that although class certification is not prohibited when numerous potential class members have large claims, the current class action scheme is aimed at vindicating the rights of individuals with small claims).  Plaintiffs assert that some of the potential class members possess claims that "are fairly small relative to the cost necessary to present those claims individually" because they own small parcels of land that are "encumbered by the easement a few hundred feet (or fewer) in length."  Pls.' Mem. 6.  Defendant, in turn, argues that the size of the individual claims is irrelevant because regardless of whether this case proceeds as a class action or through joinder, all potential claimants will be required to take an affirmative step to participate in the litigation.  And, defendant contends, plaintiffs have not explained why a claimant with a small claim would choose to opt into a class action but not join the suit as a plaintiff.[6]  In response, plaintiffs contend that the court in King specifically found the opposite of defendant's contention–that "[t]he smaller the size of the claim and the larger the number of persons, the less likely it is that,

_____

        [6] Defendant advances two additional related arguments.  First, defendant contends that plaintiffs have not explained why the 156 potential class members they identified would opt into a class action after declining to join the Brooks suit as plaintiffs.  In response, plaintiffs argue that it is not their burden to establish why potential claimants would opt into a class action after declining to join the Brooks suit.  Plaintiffs are correct; they are not required to explain the motivations of potential class members.  Defendant also argues that information from other cases certified as class actions indicates that it is unlikely that all 156 potential class members identified by plaintiffs would choose to participate in a class action.  However, defendant cites no precedent for its proposition that the court should disregard the size of the proposed class and instead consider how many potential class members would actually opt into the class.  Indeed, any efforts by the court to ascertain the ultimate size of a class would be nothing more than pure speculation.

without the benefit of a class action, any plaintiff will recover." 84 Fed. Cl. at 120 (citing Barnes, 68 Fed. Cl. at 499-500).

Plaintiffs have not established that the size of the potential class members' claims in this case render joinder impracticable. First, as defendant notes, plaintiffs do not articulate any reason why a claimant with a small claim would, as a general proposition, choose to opt into a class action but not join a suit as a plaintiff. Specifically, plaintiffs do not explain why a potential claimant would realize a smaller recovery by joining an existing suit as a plaintiff than the potential claimant would realize by becoming a member of a class. Second, plaintiffs do not indicate how the size of the claims of the 156 potential class members in this case are any different from the size of the claims of the 151 claimants who joined the Brooks suit as plaintiffs. If, as is likely, some of the plaintiffs in Brooks have small claims, then their decision to join the Brooks suit suggests that the size of their claims was not a deterrent.

In sum, plaintiffs have not established that the number of members in their proposed class is so large that joinder is impracticable. Nor have plaintiffs made a sufficient showing on the less important factors–the geographic dispersal of the potential class members and the size of each potential class member's claim–that would enable them to demonstrate that joinder is impracticable. Accordingly, plaintiffs have not satisfied the numerosity requirement of RCFC 23(a)(1). This failure is fatal to plaintiffs' motion. Nevertheless, for the sake of completeness, the court will address plaintiffs' satisfaction of the remaining requirements of RCFC 23.

## B. Commonality

The next requirement, commonality, comprises three separate inquiries. First, are there factual or legal issues common to the proposed class? RCFC 23(a)(2). Second, do these common issues predominate over issues that are not common to the proposed class? RCFC 23(b)(3). And third, has the government acted or refused to act on grounds applicable to the entire proposed class? RCFC 23(b)(2). In analyzing whether the commonality requirement has been satisfied, "the court must, where necessary, look beyond the pleadings, and seek to develop an understanding of the relevant claims, defenses, facts and substantive law." Barnes, 68 Fed. Cl. at 494; accord Wal-Mart Stores, Inc., 564 U.S. at 350-52.

### 1. Common Issues

To establish the existence of a common factual or legal issue, plaintiffs must demonstrate that the claims of the potential class members "depend upon a common contention" that "is capable of classwide resolution[.]" Wal-Mart Stores, Inc., 564 U.S. at 350; see also King, 84 Fed. Cl. at 126 (agreeing that "'commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'" (quoting Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001))); Barnes, 68 Fed. Cl. at 496 ("[T]he questions underlying the claims of the class merely must share essential characteristics, so that their resolution will advance the overall case."). A common contention can be resolved for the entire class if the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc., 564 U.S. at 350; accord

id. ("'What matters to class certification . . . is not the raising of common "questions"–even in droves–but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.'" (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131-32 (2009))); Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016) ("[A] common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" (quoting 2 William B. Rubenstein, Newberg on Class Actions § 4:50, at 196-97 (5th ed. 2012)).  Only one significant common contention capable of classwide resolution is necessary to satisfy the common-issue requirement.  See Barnes, 68 Fed. Cl. at 496 n.6.

In this case, plaintiffs assert in their opening memorandum that there is a legal issue common to all potential members of the class:  Did the Board's issuance of the NITU on August 4, 2015, constitute a taking of the potential class members' property interests without the payment of just compensation in violation of the Fifth Amendment?[7]  Defendant acknowledges the existence of a common legal question, but, relying on the decision of the United States Supreme Court ("Supreme Court") in Wal-Mart Stores, Inc., argues that plaintiffs cannot demonstrate that there is a common answer to this question applicable to all potential class members because "the question of whether a taking has occurred for each property turns on a series of individualized, fact-specific and property-specific inquiries, requiring the Court and the parties to assess each individual property claim to confirm whether a taking occurred for each parcel."[8]  Def.'s Resp. 10-11.  In other words, defendant contends that the common legal issue is not capable of classwide resolution.  Plaintiffs, in their reply, argue that Wal-Mart Stores, Inc. did not alter the standard for assessing the common-issue requirement.  In addition, plaintiffs identify five issues common to their proposed class (four more than they identified in their opening memorandum):

> The common questions of law and fact are (1) whether the NITU applies to the segment of the easement at issue in this case, (2) whether that NITU caused a taking of plaintiffs' property interest, and (3) whether, under North Carolina

---

[7]  Plaintiffs further contend in their opening memorandum that all facts arising from the issuance of the NITU are common to all potential class members.  While this contention may be accurate, it is of no moment.  It is a common factual issue, not a common fact, that will satisfy the common-issue requirement of RCFC 23(a)(2).

[8]  Defendant advances this argument in the portion of its response devoted to the predominance requirement.  However, as the Supreme Court explained in Wal-Mart Stores, Inc., its "focus on the dissimilarities between the putative class members" was "not in order to determine (as Rule 23(b)(3) requires) whether common questions predominate, but in order to determine (as Rule 23(a)(2) requires) whether there is '[e]ven a single [common] question.'" 564 U.S. at 359 (quoting Richard A. Nagareda, The Preexistence Principle and the Structure of the Class Action, 103 Colum. L. Rev. 149, 176 n.110 (2003)).

property law, plaintiffs owned the fee interest underlying the railroad easement. . . . [(4) T]he factual question, i.e., the terms of the easement deeds, is common to the entire class. [(5)] Whether the terms of the deeds created an easement under North Carolina law is likewise a . . . common question.[9]

Pls.' Reply 7 (footnote added).

Plaintiffs' contention that Wal-Mart Stores, Inc. had no effect on how courts assess the common-issue requirement is unavailing. Decisions of the Supreme Court are binding on the Court of Federal Claims, FCC v. Pottsville Broad. Co., 309 U.S. 134, 140 (1940), and the Supreme Court in Wal-Mart Stores, Inc. clearly states that a common contention must be capable of being resolved on a classwide basis, 564 U.S. at 350. The court recognizes that the facts of Wal-Mart Stores, Inc. differ significantly from those in this case. However, the Supreme Court's explanation regarding what a putative class representative must demonstrate to satisfy the common-issue requirement was not dependent upon the underlying facts of the case before it. See id. at 349-50. Indeed, it is well established that the Supreme Court in Wal-Mart Stores, Inc. made it more difficult for all class action proponents to satisfy the common-issue requirement. See, e.g., Brown v. Nucor Corp., 785 F.3d 895, 903 (4th Cir. 2015) (noting "Wal-Mart's heightened requirement of commonality"); M.D. v. Perry, 675 F.3d 832, 839 (5th Cir. 2012) ("[T]he Wal-Mart decision has heightened the standards for establishing commonality under Rule 23(a)(2) . . . ."); Elizabeth Chamblee Burch, Constructing Issue Classes, 101 Va. L. Rev. 1855, 1863-64 (2015) ("Wal-Mart Stores, Inc. v. Dukes strengthened the commonality standard under Rule 23(a) . . . . After Dukes, defendants have convinced courts to scrutinize the plaintiffs' commonality vis-à-vis one another and have thereby dodged class certification in toxic-tort cases, environmental-law cases, products-liability cases, breach-of-contract claims, and Truth in Lending Act claims to name but a few." (footnotes omitted)); Christine P. Bartholomew, Redefining Prey and Predator in Class Actions, 80 Brook. L. Rev. 743, 772 (2015) ("In Wal-Mart v. Dukes, . . . the Supreme Court heightened the [commonality] requirement. . . . This heightened commonality requirement makes class certification harder and has already resulted in certification denials . . . . Accordingly, the standards for class certifications are more arduous than a decade ago . . . ." (footnotes omitted)).

The Court of Federal Claims' class certification decisions in Rails-to-Trails cases that predate Wal-Mart Stores, Inc. do not specifically address whether the identified common issue–whether the NITU constituted a taking of the potential class members' property interests without the payment of just compensation in violation of the Fifth Amendment–was capable of classwide resolution. See, e.g., Toscano, 98 Fed. Cl. at 155; Douglas R. Bigelow Trust, 97 Fed. Cl. at 678; Singleton, 92 Fed. Cl. at 84; Jenkins v. United States, 104 Fed. Cl. 641, 644 (2009); Haggart, 89 Fed. Cl. at 533; Fauvergue, 86 Fed. Cl. at 99. Accordingly, they lack persuasive value on this issue. Thus, the court turns its attention to more recent decisions.

---

[9] Like defendant, plaintiffs erroneously address the common-issue requirement in the portion of their reply dedicated to the predominance requirement.

A review of post-<u>Wal-Mart Stores, Inc.</u> class certification decisions in federal courts reveals only three decisions that address the common-issue requirement in a Fifth Amendment takings context.  All three decisions were issued by the Court of Federal Claims, and only one of those decisions was in a Rails-to-Trails case.  In the Rails-to-Trails decision, the court held that the common legal issue was "whether the NITU issued on December 31, 2002 effected a taking of the class members' property."  <u>Geneva Rock Prods., Inc.</u>, 100 Fed. Cl. at 789.  The court did not address whether that issue was capable of classwide resolution.  However, the court identified several subissues–"central legal questions"–that were capable of resolution using generalized proof.  <u>Id.</u>  One of those questions was whether the railroad acquired the rail line via "a single grant pursuant to a federal statute in 1875," as the plaintiff apparently alleged.  <u>Id.</u>  Because no individualized inquiries were required to answer that question, it is clear that it was, under the standard set forth in <u>Wal-Mart Stores, Inc.</u>, capable of classwide resolution.  Thus, it was not necessary for the court to address whether the overarching common question–whether the NITU effected a taking–could be resolved on a classwide basis.

The other two class certification decisions are equally unhelpful to plaintiffs.  In <u>Starr International Co. v. United States</u>, the plaintiff proposed two classes, one related to a credit agreement and one related to a reverse stock split.  109 Fed. Cl. 628, 631-32 (2013).  The court identified a core legal question for each proposed class:  whether the credit agreement/reverse stock split constituted a taking without the payment of just compensation or an illegal exaction.  <u>Id.</u> at 633-34.  The court then concluded that the resolution of the core legal issue for each proposed class would affect all prospective members of that class and would require only generalized proof.  <u>Id.</u>  In short, because no individualized proof was necessary to establish a Fifth Amendment taking or illegal exaction, it is unquestionable that the core legal questions could be resolved on a classwide basis.

In <u>Bell v. United States</u>, the parties agreed that plaintiffs' property was encumbered by easements owned by the government that allowed for the construction, operation, and maintenance of levees for flood control purposes.  123 Fed. Cl. at 393-94.  In seeking to certify the case as a class action, the plaintiffs identified a common question of law:  whether a structure erected by the government on their property exceeded the scope of the existing flood control easements and therefore constituted a taking of their property interests without the payment of just compensation in violation of the Fifth Amendment.  <u>Id.</u> at 400.  The court did not specifically assess whether the common legal issue identified by the plaintiffs was capable of classwide resolution.  However, there can be no dispute that whether the government exceeded the scope of existing flood control easements by erecting a structure on the potential class members' property can be resolved either affirmatively or negatively for the putative class as a whole.

In contrast, the primary common legal issue identified by plaintiffs in this case–whether the Board's issuance of the NITU on August 4, 2015, constituted a taking of the potential class members' property interests without the payment of just compensation in violation of the Fifth Amendment–cannot be resolved for the proposed class as a whole.  The NITU only effects a Fifth Amendment taking if, among other prerequisites, Norfolk Southern possessed an easement and the scope of the easement was limited to railroad purposes.  See <u>Ladd v. United States</u>, 630

F.3d 1015, 1019 (Fed. Cir. 2010) (noting that in Trails Act cases, a taking occurs when "government action destroys state-defined property rights by converting a railway easement to a recreational trail, if trail use is outside the scope of the original railway easement").  However, because Norfolk Southern acquired its property interests in the railroad right-of-way through condemnation, prescription, and various deeds, it is not possible to ascertain whether Norfolk Southern acquired an easement–or the scope of any such easement–in one fell swoop as required by <u>Wal-Mart Stores, Inc.</u>  Rather, an examination of each of the deeds and other documents relied upon by plaintiffs is necessary.  Such an examination may reveal that Norfolk Southern owns both fee simple estates and easements in the railroad right-of-way, and that the easements acquired by Norfolk Southern, if any, are of varying scopes.[10]  Accordingly, the answer to the primary common question identified by plaintiffs might be "yes" for some potential class members and "no" for other potential class members.  The question therefore cannot be resolved on a classwide basis.

The other four issues described by plaintiffs in their reply–"whether the NITU applies to the segment of the easement at issue in this case"; "whether, under North Carolina property law, plaintiffs owned the fee interest underlying the railroad easement"; "the terms of the easement deeds"; and "[w]hether the terms of the deeds created an easement under North Carolina law"–also cannot be used to satisfy the common-issue requirement.  The first two issues are common to the proposed class only if the deeds and documents that established the railroad right-of-way created an easement.  Although plaintiffs contend that all of the deeds contain "the same or similar operative language" creating an easement, Pls.' Reply 7, they have not, as noted above, established that contention by sufficient evidence.  This failure of proof also affects the remaining two issues described by plaintiffs; those issues cannot be resolved on a classwide basis unless the deeds contain sufficiently similar language.

In short, plaintiffs have not identified a common contention that can be resolved on a classwide basis, and therefore have not satisfied the common-issue requirement of RCFC 23(a)(2).

---

[10]  Along with their motion to certify a class action, plaintiffs submitted an affidavit from their attorney attesting that Norfolk Southern acquired an easement via condemnation, prescription, and right-of-way deeds, and that the deeds "are all of the same type and have the same or very similar operative language."  Pls.' Ex. A ¶ 16.  Plaintiffs also submitted copies of the deeds; however, many of the deeds are barely legible or not legible at all (most are handwritten, and some of the copies are of poor quality).  Thus, the court is unable to verify plaintiffs' attorney's broad representation that all of the deeds are of the same type and contain similar operative language.  Moreover, plaintiffs' attorney made no representations concerning the scope of the purported easements acquired by Norfolk Southern via condemnation, prescription, and deed.  And, due to the legibility issues, the court could not determine whether the deeds, assuming that they conveyed an easement, limited the scope of the easement to railroad purposes.

## 2. Predominance

In addition to determining whether plaintiffs have established the existence of common factual or legal issues, the court must determine whether those issues predominate over issues that are not common to the proposed class.  This predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and "is far more demanding" than the initial common-issue inquiry.  Amchem Prods., Inc., 521 U.S. at 623-24; accord Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013).  Common issues–those in which the same evidence could be used by each member of the class to make a prima facie showing–predominate over individual issues–those in which each member of the class must present individualized evidence to make a prima facie showing–if they "'are more substantial than the issues subject only to individualized proof.'"  Jaynes, 69 Fed. Cl. at 457 (quoting Moore v. PayneWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002)); accord Tyson Foods, Inc., 136 S. Ct. at 1045; Geneva Rock Prods., Inc., 100 Fed. Cl. at 789.

Plaintiffs contend that they satisfy the predominance requirement because the central legal question applicable to all potential class members–whether the Board's issuance of the NITU on August 4, 2015, constituted a taking of the potential class members' property interests without the payment of just compensation in violation of the Fifth Amendment–predominates over any individual issues, such as the amount of compensation to which each potential class member might be entitled.  Plaintiffs emphasize that there are "few factual differences" among the potential class members because the deeds that conveyed the property interests to create the railroad right-of-way contain similar language, and because all potential class members own property along the same "stretch of land."  Pls.' Mem. 8.  In response, defendant asserts that individual issues–(1) whether Norfolk Southern owned an easement, (2) the scope of any easement, (3) whether the potential class members owned property encumbered by an easement owned by Norfolk Southern on the date that the Board issued the NITU, and (4) the amount of just compensation–predominate over the common question of whether the Board's issuance of the NITU effected a taking.  Plaintiffs, in turn, characterize the individual issues raised by defendant as issues of fact, and contend that "the factual inquiry needed in this particular case is actually very limited and manageable."  Pls.' Reply 7.

As an initial matter, plaintiffs mischaracterize the issues identified by defendant; some are factual in nature, but others require legal analysis.  For example, determining whether a particular deed conveys an easement, and, if so, the scope of that easement, will require an examination of North Carolina law.  More problematic for plaintiffs is the fact that they have not identified any issues common to the entire proposed class that can be resolved on a classwide basis.  Thus, they cannot establish that common issues predominate over issues that require individual determinations, such as the issues identified by defendant.

## 3. Similar Treatment

The final aspect of the commonality requirement is determining whether the government has "acted or refused to act on grounds generally applicable to the class."  RCFC 23(b)(2).  Plaintiffs contend, and defendant does not dispute, that the Board's issuance of the NITU is a

government action generally applicable to the entire proposed class.  Plaintiffs are correct.  See Geneva Rock Prods., Inc., 100 Fed. Cl. at 789 ("The NITU was a single act that affected all putative class members.  This single act is the wellspring of all the putative class members' claims." (citations omitted)); see also Ladd, 630 F.3d at 1019 ("The NITU is the government action that prevents the landowners from possession of their property unencumbered by the easement."); Caldwell, 391 F.3d at 1233-34 ("The issuance of the NITU is the only government action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right-of-way.").  Accordingly, plaintiffs have satisfied this aspect of the commonality requirement.

## C.  Typicality

The third general requirement for maintaining a class action is that the claims of the proposed class representative(s) be typical of the claims of the other prospective class members. See RCFC 23(a)(3).  In many ways, the typicality requirement is similar to the commonality requirement:  "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  Gen. Tel. Co. of the Sw., 457 U.S. at 157 n.13. Nevertheless, typicality and commonality are distinct requirements.  Typicality is demonstrated "when 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  Barnes, 68 Fed. Cl. at 498 (quoting In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992)).  It "may be satisfied even if some factual differences exist between the claims of the named representatives and the claims of the class, provided that the named representatives' claims share the same essential characteristics as the claims of the class at large."  Fisher v. United States, 69 Fed. Cl. 193, 200 (2006) (citing Piazza v. EBSCO Indus., Inc., 273 F.3d 1341, 1351 (11th Cir. 2001)).  Accordingly, "[t]he threshold requirement for typicality is . . . not high."  Id.

Plaintiffs argue that they have satisfied the typicality requirement because their claims and the claims of the proposed class are "premised on a common legal theory of recovery," and because both they and the proposed class "allege that they own fee simple title to lands along the Railroad Line in Cleveland [County], North Carolina."  Pls.' Mem. 9.  Defendant counters that plaintiffs have not met the typicality requirement because they "have not established that the named plaintiffs have an ownership interest in the subject corridor or that the deeds for the named plaintiffs' properties are representative or typical of the deeds affecting the claims of the putative class members."  Def.'s Resp. 9-10.  In response, plaintiffs argue that defendant is applying a stricter standard for typicality than is warranted.

Normally, plaintiffs' contention that their claims and the claims of the proposed class are premised on the same legal theory–that the Board's issuance of the NITU on August 4, 2015, effected a taking of their property interests without the payment of just compensation in violation of the Fifth Amendment–would be sufficient to satisfy the typicality requirement.  See Fauvergue, 86 Fed. Cl. at 100 ("Plaintiffs have satisfied their burden in proving typicality under RCFC 23(a)(3).  The named representatives' claims share the same essential characteristics as

the claims of the entire putative class:  all plaintiffs' claims in the proposed class arose under the Trails Act when the same NITU was issued.").  However, upon review of the second amended complaint, it appears that some or all of the named plaintiffs may not have claims typical of the proposed class.

As previously noted, plaintiffs allege in their second amended complaint that Norfolk Southern owned an easement for railroad purposes underlying the segments of a railroad right-of-way situated between milepost SB 144.55 and milepost SB 154.59, between milepost SB 158.10 and milepost SB 160.00, between milepost SF 384.6 and milepost SF 407.4, and between milepost SB 144.55 and milepost SB 141.35–the same four segments covered by the August 4, 2015 NITU.  They further allege that Norfolk Southern's easement lay across their property, and identify the specific parcels of land encumbered by that easement.  However, plaintiffs did not indicate which plaintiffs owned parcels of land adjacent to which segment(s) of Norfolk Southern's purported easement.[11]  Accordingly, from the facts alleged in the second amended complaint, the court can surmise only that each plaintiff owns one or more parcels of land adjacent to one or more of the four segments of the purported easement.

Despite claiming that they own property adjacent to the four segments of the railroad right-of-way described in the NITU, plaintiffs, in their motion to certify this case as a class action, describe the proposed class as:

> All persons who on August 4, 2015, owned an interest in lands constituting part of the railroad corridor or right-of-way on which a rail line was formerly operated by Norfolk Southern Railway Company (NSR), from milepost SB 144.55 to milepost SB 154.50 and from milepost SB 158.10 to milepost [SB] 160.00, in Cleveland County, North Carolina . . . .

Pls.' Mot. 1 (emphasis added).  Excluded from this proposed class definition are persons who own an interest in parcels of land adjacent to the segments of the railroad right-of-way situated between milepost SF 384.6 and milepost SF 407.4, and between milepost SB 144.55 and milepost SB 141.35.  If any of the twenty named plaintiffs own parcels of land that are adjacent only to these two segments, then they might not be representative of the proposed class.  As a result, any such plaintiffs might not have claims that are typical of the claims of the potential class members.  This possibility precludes plaintiffs from satisfying the typicality requirement of RCFC 23(a)(3).[12]

---

[11]  For example, plaintiffs allege that Douglas G. Brown owns parcel number 71228, but do not identify the segment or segments of the purported easement to which parcel number 71228 is adjacent.

[12]  The court recognizes that the incongruity between the allegations in the second amended complaint and the proposed class definition may be the result of imprecise drafting. The August 4, 2015 NITU, which neither party submitted with their pleadings or briefs, reflects that Norfolk Southern sought to (1) abandon the two segments situated between milepost SB

### D.  Adequacy

In addition to establishing numerosity, commonality, and typicality, a putative class representative must establish that he or she will "fairly and adequately protect the interests of the class."  RCFC 23(a)(4).  There are two aspects to the adequacy requirement:  the existence of conflicts between the putative class representative and the members of the proposed class, and the qualifications and capabilities of proposed class counsel.  Amchem Prods., Inc., 521 U.S. at 625-26 & n.20; Gen. Tel. Co. of the Sw., 457 U.S. at 157 n.13.

### 1.  Conflicts of Interest

The first component of the adequacy requirement concerns whether there are any conflicts of interest precluding a plaintiff from serving as a class representative.  See Gen. Tel. Co. of the Nw., Inc., 446 U.S. at 331.  Because plaintiffs have not established the existence of common issues resolvable on a classwide basis or that their claims are typical of the claims of the potential class members, it is not possible to conclude that plaintiffs lack any conflicts of interest with the proposed class.  See Amchem Prods., Inc., 521 U.S. at 626 n.20 ("The adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a) . . . .").  Plaintiffs therefore have not satisfied the conflicts-of-interest requirement.

### 2.  Proposed Class Counsel

The second component of the adequacy requirement focuses on the experience and competence of proposed class counsel.  Before the court can appoint class counsel, it "must consider":

    (i)  the work counsel has done in identifying or investigating potential claims in the action;
    (ii)  counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
    (iii)  counsel's knowledge of the applicable law; and
    (iv)  the resources that counsel will commit to representing the class[.]

---

144.55 and milepost SB 154.59, and between milepost SB 158.10 and milepost SB 160.00; (2) discontinue trackage rights over the segment situated between milepost SF 384.6 and milepost SF 407.4; and (3) discontinue service over the segment situated between milepost SB 144.55 and milepost SB 141.35.  See Surface Transportation Board, Decision and Notice of Interim Trail Use or Abandonment:  Norfolk Southern Railway Company–Abandonment, Discontinuance of Trackage Rights and Discontinuance of Service–In Cleveland and Rutherford Counties, N.C., and Cherokee County, S.C., https://www.stb.dot.gov/Decisions/readingroom.nsf/UNID/ 5F817A6B4689ED2385257E970069CE04/$file/44597.pdf (Aug. 4, 2015).  It may be the case that all of the property owned by plaintiffs is adjacent to the two segments that Norfolk Southern sought to abandon (in other words, the two segments included in the proposed class definition).  However, the court cannot to draw this conclusion based on the evidence currently before it.

RCFC 23(g)(1)(A).  In addition, it "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]"  RCFC 23(g)(1)(B).  Although defendant does not challenge the experience or qualifications of plaintiffs' counsel, the court must satisfy itself that the appointment of plaintiffs' counsel as class counsel would be in the best interests of the proposed class.  RCFC 23(g)(2).

In an affidavit submitted with plaintiffs' motion to certify this case as a class action, plaintiffs' counsel describes the work he performed to identify and investigate potential claims and his experience in handling Rails-to-Trails cases, including class actions.  Further, there is no dispute that plaintiffs' counsel possesses knowledge of the applicable law and the resources necessary to represent the proposed class.  Based on the information before it, the court concludes that the appointment of plaintiffs' counsel as class counsel would be in the best interests of the proposed class if the case were certified as a class action.

### E.  Superiority

The final requirement that plaintiffs must satisfy to maintain a class action is superiority; in other words, a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy."[13]  RCFC 23(b)(3).  This requirement is met if the prospective class representative establishes that "a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  Fed. R. Civ. P. 23 Advisory Committee Note (1966 Amendment), quoted in Amchem Prods., Inc., 521 U.S. at 615.  Among the factors to consider in determining superiority are (1) the potential "class members' interests in individually controlling the prosecution of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by class members"; and (3) "the likely difficulties in managing a class action."  RCFC 23(b)(3).  "Essentially, under this prong of the analysis, the court is obliged to conduct a cost/benefit analysis, weighing any potential problems with the manageability or fairness of a class action against the benefits to the system and the individual members likely to be derived from maintaining such an action."  Barnes, 68 Fed. Cl. at 499, quoted in Geneva Rock Prods., Inc., 100 Fed. Cl. at 790; see also Jaynes, 69 Fed. Cl. at 459 ("In making [the superiority] assessment, the court must consider what alternative procedures are available for disposing of the dispute and compare the possible alternatives to determine whether Rule 23 will be sufficiently effective to justify the class action approach.  The superiority requirement is most clearly satisfied 'if a comparative evaluation of other procedures reveals no other realistic possibilities.'" (citation omitted) (quoting 7AA Wright 2005, supra, § 1779)).

---

[13]  There are several other methods of adjudicating the claims of multiple individuals arising from the same course of conduct:  the permissive joinder of parties under RCFC 20; the filing of a related case under RCFC 40.2; and consolidation under RCFC 42(a).  Procedurally, RCFC 20 requires a motion to amend the complaint to join new plaintiffs, while RCFC 40.2 and RCFC 42(a) require the filing of separate complaints.

Neither party specifically addresses the factors described in RCFC 23(b)(3).  However, their arguments generally pertain to the second and third factors.  Plaintiffs argue that a class action is the superior method of litigating this case because it would achieve economies of time, effort, and expense, and prevent inconsistent adjudications.  Specifically, they contend that it would be more efficient for the court to hear the claims of the 156 potential class members in one suit rather than in 156 separate suits, and more efficient for the parties to conduct title research and property appraisals in a class action.  Defendant, in contrast, argues that litigating this case as a class action is not superior to proceeding through joinder.  It asserts that parties and the court in Rails-to-Trails cases have developed efficient methods of litigating suits proceeding through joinder; that the notice to potential claimants required in a class action might confuse those claimants who have already joined the <u>Brooks</u> suit; and that the evidence required for each potential class member to establish their Fifth Amendment takings claim will be unique.  In their reply, plaintiffs assert that defendant has not identified any problem with proceeding as a class action that the court has not already addressed or managed in other cases.

Although plaintiffs are correct that many Rails-to-Trails cases have proceeded as class actions in this court, they fail to meet their burden of proving that a class action is superior to other methods of litigating this particular case.  As an initial matter, the court has already held that plaintiffs did not demonstrate that proceeding through joinder would be impracticable in this case.  To the contrary, the fact that the <u>Brown</u> suit is proceeding through joinder reflects that joinder is a reasonable and practicable method of adjudicating whether the Board's issuance of the August 4, 2015 NITU effected a taking of property interests without the payment of just compensation in violation of the Fifth Amendment.  Moreover, plaintiffs' failure to identify any common issues that can be resolved on a classwide basis strongly suggests that a class action is not superior to proceeding through joinder.  Finally, there is no risk of inconsistent adjudications when proceeding through joinder.

In sum, the court cannot conclude that a class action would be a superior method of litigating this case.  Rather, based on the evidence proffered by plaintiffs, proceeding through joinder is at least an equally effective means of litigating the claims of plaintiffs and the other potential claimants.  Accordingly, plaintiffs have not established that a class action is superior to other means of litigating this case as required by RCFC 23(b)(3).

### III.  CONCLUSION

As set forth above, plaintiffs have not met the requirements set forth in RCFC 23 for maintaining a class action.  In particular, they have not satisfied the numerosity, typicality, and superiority requirements, and they have failed to satisfy elements of the commonality and adequacy requirements.  Each of plaintiffs' failures is fatal to their motion to certify this case as a class action.  Accordingly, plaintiffs' motion is **DENIED**.  By **no later than Friday, June 10,**

**2016**, the parties shall file a joint status report containing a proposed schedule for the liability phase of this case.

     **IT IS SO ORDERED.**

                                   s/ Margaret M. Sweeney
                                   MARGARET M. SWEENEY
                                   Judge