# In the United States Court of Federal Claims

No. 15-1297L

(Filed: April 9, 2021)

```
*****************************************
DOUGLAS G. BROWN et al.,                 *
                                         *
                Plaintiffs,              *   Rails-to-Trails; Fifth Amendment Taking;
                                         *   Threshold Title Issues; Centerline
v.                                       *   Presumption Under North Carolina Law;
                                         *   Intervening Public Road; Summary
THE UNITED STATES,                       *   Judgment
                                         *
                Defendant.               *
*****************************************
```

J. Robert Sears, St. Louis, MO, for plaintiffs.

Brigman L. Harman, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**

**SWEENEY**, Senior Judge

In this Rails-to-Trails case, plaintiffs own real property purportedly adjacent to a railroad right-of-way in Cleveland County, North Carolina. They contend that the United States, by authorizing the conversion of the railroad right-of-way into a recreational trail pursuant to the National Trail Systems Act ("Trails Act"), took their property without paying just compensation in violation of the Fifth Amendment to the United States Constitution. The parties cross-move for summary judgment on liability. For the reasons set forth below, the court grants in part and denies in part plaintiffs' motion and denies defendant's cross-motion.

**I. BACKGROUND**

**A. Statutory and Regulatory Context**

During the last century, the United States began to experience a sharp reduction in rail trackage. Preseault v. Interstate Com. Comm'n, 494 U.S. 1, 5 (1990) ("Preseault I"). To remedy this problem, Congress enacted a number of statutes, including the Trails Act, 16 U.S.C. §§ 1241-1251 (2012). The Trails Act, as amended, provides for the preservation of "established railroad rights-of-way for future reactivation of rail service" by authorizing the interim use of such rights-of-way as recreational and historical trails. Id. § 1247(d). This process is referred to as "railbanking," and is overseen by the Surface Transportation Board ("Board"), id., the federal agency with the "exclusive" jurisdiction to regulate "the construction, acquisition, operation,

abandonment, or discontinuance" of most railroad lines in the United States, 49 U.S.C. § 10501(b) (2012).

Before railbanking can occur, the railroad company must seek to abandon its line, either by initiating abandonment proceedings with the Board pursuant to 49 U.S.C. § 10903, or by seeking an exemption from such proceedings pursuant to 49 U.S.C. § 10502.[1] While considering the railroad company's abandonment application or notice of exemption, the Board will entertain requests for the interim use of the railroad line as a trail pursuant to 16 U.S.C. § 1247(d). 49 C.F.R. §§ 1152.25, 1152.29(a). If a trail-use request satisfies the requirements of 16 U.S.C. § 1247(d), the Board makes the necessary findings pursuant to 49 U.S.C. § 10502(a) or 49 U.S.C. § 10903(d), and the railroad company agrees to negotiate a trail-use agreement, the Board will issue one of two documents: if the railroad company initiated abandonment proceedings, the Board will issue a Certificate of Interim Trail Use or Abandonment, and if the railroad company is exempt from abandonment proceedings, the Board will issue a Notice of Interim Trail Use or Abandonment ("NITU"). Id. § 1152.29(b)-(d). The effect of both documents is the same: to "permit the railroad to discontinue service, cancel any applicable tariffs, and salvage track and materials, consistent with interim trail use and rail banking . . . ; and permit the railroad to fully abandon the line if no agreement is reached 180 days after it is issued, subject to appropriate conditions . . . ." Id. § 1152.29(d)(1); accord id. § 1152.29(c)(1). The Board will entertain requests to extend the 180-day deadline to enable further negotiations. If a trail-use agreement is executed, then abandonment of the railroad line is stayed for the duration of the agreement. Id. § 1152.29(c)-(d); 16 U.S.C. § 1247(d).

### B. Factual History

Plaintiffs own real property in Cleveland County, North Carolina, purportedly adjacent to an 11.85-mile portion of a railroad right-of-way situated between (1) milepost SB 144.55 and milepost SB 154.50, and (2) milepost SB 158.10 and milepost SB 160.00.[2] The right-of-way was acquired between 1886 and 1889 by predecessors of the right-of-way's current owner, Norfolk Southern Railway Company ("Norfolk Southern"). On June 16, 2015, Norfolk Southern submitted to the Board a notice of exemption to abandon the right-of-way. Two days later, the City of Shelby, North Carolina ("City") submitted a trail-use request to the Board. Norfolk Southern agreed to negotiate a trail-use agreement with the City, and on August 4, 2015, the Board issued a NITU. The City and Norfolk Southern were granted several extensions of time to negotiate a trail-use agreement and ultimately reached an agreement on December 19, 2019.

---

[1] A railroad company may petition for an individual or class exemption, 49 U.S.C. § 10502(a)-(b), or, as relevant in this case, invoke a previously created class exemption, 49 C.F.R. § 1152.50 (2014).

[2] The court derives the facts in this section, which are undisputed, from the exhibits attached to the parties' summary judgment motions and the parties' February 10, 2020 joint status report.

## C. Procedural History

On November 2, 2015, four individuals filed suit in this court alleging that through the operation of the Trails Act, defendant had taken their property without paying just compensation in violation of the Fifth Amendment. Additional plaintiffs joined the action, culminating in the filing of a fourth amended complaint on November 15, 2016, that set forth the claims of twenty property owners.[3] The parties then briefed cross-motions for summary judgment on liability. In their motion, plaintiffs asserted that they had cognizable property interests affected by the Board's issuance of the NITU and that defendant was liable for taking those interests. In its response and cross-motion for summary judgment, defendant challenged several aspects of plaintiffs' assertion that they possessed cognizable property interests and plaintiffs' overarching contention that defendant was liable for a taking.

Shortly after briefing concluded, and at the parties' request, the court stayed further proceedings on the cross-motions until either a trail-use agreement was executed or the deadline for executing such an agreement expired. Then, after the City and Norfolk Southern reached a trail-use agreement, the parties requested that the stay be continued while they assessed whether they could reach additional stipulations in light of the undersigned's June 27, 2018 decision in Brooks v. United States, 138 Fed. Cl. 371 (2018).

In a subsequently filed joint status report, the parties requested that the court rule on the pending summary judgment motions, but asserted that two of the issues discussed in those motions no longer needed to be resolved. First, they noted that the execution of the trail-use agreement, which affects all of the parcels at issue in this case, moots the issue of whether the issuance of the NITU caused a taking; defendant concedes that a taking has occurred (to the extent that plaintiffs possessed cognizable property interests at the time of the taking). Second, defendant withdrew the argument it advanced in its response and cross-motion for summary judgment related to intervening public road rights-of-way because that argument did not address the considerations discussed by the court in its Brooks decision.

After reviewing the parties' summary judgment briefing and the joint status report, the court directed plaintiffs to explain, in a status report, the manner in which they linked their parcels to the original conveyances to one of Norfolk Southern's predecessors, and to supplement the summary judgment record with copies of deeds and documents that were missing, incomplete, or illegible. The court also directed defendant to file a responsive status report to indicate whether, and in what manner, the additional information supplied by plaintiffs affected its arguments.

The parties filed their status reports and the requested documents. In its responsive status report, defendant indicated that based on the new information and documents produced by plaintiffs, it no longer challenged whether plaintiffs own two of the parcels at issue. It also "agree[d] that the source deeds [conveying the railroad right-of-way to Norfolk Southern's predecessors] associated with the thirty-six parcels at issue conveyed an easement limited to

---

[3] For the purpose of this decision, the term "property owner" includes individuals, groups of individuals, and entities.

railroad purposes (rather than a fee interest) to the railroad in question." Def.'s Status Report 2, Feb. 26, 2021. Consequently, the only issue that defendant expressly contests in opposition to plaintiffs' summary judgment motion is whether plaintiffs have established an ownership interest in four of the parcels at issue at the time of the taking. The court deems oral argument on this issue, or any other related liability issues, unnecessary.

## II. DISCUSSION

### A. Motions for Summary Judgment

Both plaintiffs and defendant move for summary judgment on liability pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. RCFC 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is genuine if it "may reasonably be resolved in favor of either party." Id. at 250.

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp., 477 U.S. at 323. The nonmoving party then bears the burden of showing that there are genuine issues of material fact for trial. Id. at 324. Both parties may carry their burden by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." RCFC 56(c)(1).

The court must view the inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Entry of summary judgment is mandated against a party who fails to establish "an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. However, if neither party satisfies this burden on the filing of cross-motions for summary judgment, then the court must deny both motions. See First Commerce Corp. v. United States, 335 F.3d 1373, 1379 (Fed. Cir. 2003) ("When both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving reasonable inferences against the party whose motion is under consideration."); Bubble Room, Inc. v. United States, 159 F.3d 553, 561 (Fed. Cir. 1998) ("The fact that both the parties have moved for summary judgment does not mean that the court must grant summary judgment to one party or the other.").

### B. Fifth Amendment Takings

The Fifth Amendment prohibits the federal government from taking private property for public use without paying just compensation. U.S. Const. amend. V. To establish a taking, a plaintiff must first "identif[y] a cognizable Fifth Amendment property interest that is asserted to

be the subject of the taking." Casitas Mun. Water Dist. v. United States, 708 F.3d 1340, 1348 (Fed. Cir. 2013); accord Klamath Irrigation Dist. v. United States, 635 F.3d 505, 520 n.12 (Fed. Cir. 2011) ("It is plaintiffs' burden to establish cognizable property interests for purposes of their takings . . . claims."). To demonstrate a cognizable property interest in a Trails Act case, a plaintiff must establish ownership in land adjacent to the railroad line described in the NITU and that ownership in that land can be traced to the railroad company's acquisition. Brooks, 138 Fed. Cl. at 377. A plaintiff must also establish that the railroad company acquired an easement for railroad purposes that continued to exist at the time of the alleged taking. Ellamae Phillips Co. v. United States, 564 F.3d 1367, 1373 (Fed. Cir. 2009); Preseault v. United States, 100 F.3d 1525, 1533 (Fed. Cir. 1996) (en banc) ("Preseault II"). In general, state law governs the determination of the property interest acquired by the railroad company. See Preseault I, 494 U.S. at 8; Preseault II, 100 F.3d at 1534. Moreover, the acquisition of property rights is governed by the law in effect at the time the rights were acquired. See Hash v. United States, 403 F.3d 1308, 1315 (Fed. Cir. 2005); Preseault II, 100 F.3d at 1534.

"[I]f the court concludes that a cognizable property interest exists, it then determines whether the government's action amounted to a compensable taking of that interest." Casitas Mun. Water Dist., 708 F.3d at 1348. In Trails Act cases, a taking occurs when "government action destroys state-defined property rights," either "by converting a railway easement to a recreational trail, if trail use is outside the scope of the original railway easement," Ladd v. United States, 630 F.3d 1015, 1019 (Fed. Cir. 2010), or by compelling the continuation of a railroad-purposes easement to accommodate negotiations for a trail-use agreement, even if the negotiations are ultimately unsuccessful, see id. at 1025; Caquelin v. United States, 959 F.3d 1360, 1364, 1367 (Fed. Cir. 2020). It is well settled that the Board's issuance of a NITU, which forestalls the full abandonment of the railroad line, "is the government action that prevents the landowners from possession of their property unencumbered by the easement." Ladd, 630 F.3d at 1023; accord Caquelin, 959 F.3d at 1367; Barclay v. United States, 443 F.3d 1368, 1374 (Fed. Cir. 2006); Caldwell v. United States, 391 F.3d 1226, 1233-34 (Fed. Cir. 2004).

### C. Cognizable Property Interest

The court begins its analysis by determining whether plaintiffs have established cognizable property interests affected by the Board's issuance of the NITU. Defendant does not dispute most of plaintiffs' contentions in this regard. However, because the parties have not affirmatively stipulated to some of the apparently undisputed issues, the court must address them to determine whether plaintiffs have met their burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 322-23.

### 1. Ownership of Parcels Adjacent to the Railroad Right-of-Way on the Date of the Taking

To establish cognizable property interests, plaintiffs must first demonstrate that they owned land adjacent to the railroad right-of-way on the date of the taking—August 4, 2015. See Brooks, 138 Fed. Cl. at 377.

### a. Ownership on the Date of the Taking

Plaintiffs contend that they acquired parcels affected by the issuance of the NITU prior to the date of the taking pursuant to recorded instruments, as follows:

| Plaintiff | Parcel Number | Conveyance Date | Conveyance Instrument | Book/Page Recorded |
|---|---|---|---|---|
| Bettis, Doris B. | 4345 | 3/7/1991 | Deed | 1095/2020 |
| Bettis, Doris B. | 4382 | 3/7/1991 | Deed | 1095/2020 |
| Bettis, Doris B. | 4383 | 3/7/1991 | Deed | 1095/2020 |
| Bettis, Doris B. | 4399 | 3/7/1991 | Deed | 1095/2020 |
| Bettis, Doris B. | 4406 | 3/7/1991 | Deed | 1095/2020 |
| Bettis, Doris B. | 4504 | 3/7/1991 | Deed | 1095/2020 |
| Bettis, Doris B. | 50148 | 3/7/1991 | Deed | 1095/2020 |
| Gene Bettis Family Trust | 4347 | 12/16/1993 | Disclaimer | 1139/660 |
| Gene Bettis Family Trust | 4348 | 12/16/1993 | Disclaimer | 1139/660 |
| Gene Bettis Family Trust | 4385 | 12/16/1993 | Disclaimer | 1139/660 |
| Gene Bettis Family Trust | 4442 | 12/16/1993 | Disclaimer | 1139/660 |
| Gene Bettis Family Trust | 6308 | 12/16/1993 | Disclaimer | 1139/660 |
| Billedeaux, Jane | 4441 | 9/27/2002 | Will | 02E/615 |
| Billedeaux, Jane | 43846 | 10/12/1993 | Deed | 1135/1673 |
| Billedeaux, Jane | 44862 | 10/12/1993 | Deed | 1135/1675 |
| Brown, Douglas G. | 71228 | 3/21/2005 | Deed | 1444/1036 |
| Champion, Russell Keith & Dara | 3437 | 5/25/1993 | Deed | 1129/0581 |
| Clark, Shirley K. | 4514 | 5/6/2002 | Deed | 1331/55 |
| Clark, Shirley K. | 4515 | 5/1/2002 | Deed | 1330/1717 |
| Clark, Evelyn K. Wallace | 4584 | 10/26/2004 | Deed | 1430/950 |
| Hamrick S. R. Heirs | 27799 | 3/13/2014 | Deed | 1674/437 |
| Hamrick S. R. Heirs | 49440 | 3/13/2014 | Deed | 1674/437 |
| Hopper, Max H. & Tucker | 4404 | 5/26/2004 | Deed | 90E/282 |
| Horner, Nancy A. | 17851 | 8/31/2004 | Deed | 1425/254 |
| Kelley, Mary Louise | 4446 | 10/13/2005 | Deed | 1466/957 |
| King, Susan Baxter | 27773 | 3/13/2014 | Deed | 1674/437 |
| Owensby, Linda Kirby | 20863 | 7/13/1999 | Deed | 1252/1116 |
| Owensby, Linda Kirby | 20865 | 6/18/1986 | Deed | 19L/244 |
| Porter, Carl R. & Kathern C. | 3296 | 8/2/1983 | Deed | 18E/667 |
| Tomjack Investments LLC | 59617 | 3/9/2015 | Deed | 1693/935 |
| Tube Enterprises, Inc. | 20701 | 2/18/2015 | Deed | 1692/0810 |
| Tube Enterprises, Inc. | 20702 | 2/18/2015 | Deed | 1692/0810 |
| Charles W. Tull Revocable Trust | 19599 | 1/30/2008 | Deed | 1476/1250 |

| Wake Chapel Properties LLC | 3165 | 12/31/2012 | Deed | 1648/872 |
| Webb, Joseph M. | 47378 | 5/12/2008 | Deed | 1552/458 |
| Wright, Jerry | 3206 | 6/19/1981 | Deed | 1708/2258 |

See Pls.' Findings of Fact ¶¶ 12-51; Pls.' Exs. G, M-Q. In support of this contention, plaintiffs submitted copies of

- property records maintained by Cleveland County in its Geographic Information System ("GIS"), accessible on the Internet,[4] that indicate each parcel's location, each parcel's owner(s) as of March 2016 (after the date of the taking), and the book and page number of the deed that established ownership in the parcel, see Pls.' Exs. G, M;

- the deeds referenced in the Cleveland County property records that indicate the name(s) of the grantee(s) and the conveyance date (before the date of the taking), see Pls.' Exs. G, P-Q; Pls.' Ex. 12 at 4; Pls.' Ex. 13;[5] and

- estate documents reflecting certain conveyances occurring before the date of the taking, see Pls.' Ex. N (Last Will and Testament of Gene Bettis admitted into probate on June 1, 1993); Pls.' Ex. O (Renunciation and Qualified Disclaimer of Doris B. Bettis recorded on December 16, 1993); Pls.' Ex. 12 at 1-3 (Last Will and Testament of Frances S. Sepaugh admitted into probate on September 27, 2002).

With respect to the submitted Cleveland County property records, plaintiffs provide two documents for each parcel. The first is what the court will refer to as a "Map Record," which includes (1) a small satellite-view map of the parcel and the surrounding area with the boundaries of the parcel outlined in a heavy black dashed line (but with no other markings), and (2) basic information concerning the parcel, such as the name of the owner(s), the parcel address, the deed book and page number, the land area in acres or square feet, and the map, block, and lot numbers. See, e.g., Pls.' Ex. G at 5, 15. The second is the "Property Card," which includes basic information concerning the property generally identical to the information provided on the Map Record, along with a sales history for the parcel and details regarding any improvements on the parcel. See, e.g., id. at 6-7, 16-17.

With respect to thirty-one of the parcels, there is no dispute that plaintiffs owned the specified parcels on the date of the taking. For each of those parcels, plaintiffs submitted a deed (and, where appropriate, estate documents) reflecting the conveyance of the parcel described in

---

[4] Each submitted record bears a URL indicating the source website—either https://arcgis.webgis.net/nc/Cleveland/ or https://www.webgis.net/nc/cleveland/.

[5] Because the pages in many of plaintiffs' exhibits are not consecutively numbered, the court uses the page numbers assigned by the court's electronic case filing system in its citations.

Cleveland County property records to the named plaintiff(s) prior to the date of the taking, along with Property Cards reflecting that those plaintiffs owned the parcels after the date of the taking. Accordingly, plaintiffs are entitled to summary judgment for these claims on the question of ownership. However, ownership of the five remaining parcels requires closer examination.

First, defendant contends that plaintiffs have not satisfied their burden of showing that the Gene Bettis Family Trust owned parcels 4385 and 4442 on the date of the taking. Defendant notes that the deed produced by plaintiffs in support of their ownership claim includes legal descriptions for twelve separate tracts, see, e.g., id. at 101-08, but maintains that none of those descriptions matches the dimensions of the parcels depicted on the maps in the Map Records, see id. at 98, 122. Plaintiffs, in their reply, did not identify which of the twelve tracts described in the deed can be matched with parcels 4385 and 4442. However, a close inspection of the legal descriptions of the tracts and the property records for the parcels reveals that one of the parcels can be matched to a tract in the deed.

Specifically, the legal description for tract 3 indicates that the tract was "the identical property conveyed . . . by deed recorded in Book 13-Q at Page 579 of the Cleveland County Registry." Id. at 125-26. The sales history section of the Property Card for parcel 4442 reflects that the parcel was conveyed via an instrument recorded on page 579 of book 13-Q. Id. at 123. Thus, tract 3 is parcel 4442.

Furthermore, the Property Card for parcel 4442, when read in conjunction with Mr. Bettis's Last Will and Testament and Mrs. Bettis's Renunciation and Qualified Disclaimer, reflects that the Gene Bettis Family Trust owns the parcel. In his will, Mr. Bettis identified all of the real property that would be included in his residual estate, which he bequeathed to Mrs. Bettis. Pls.' Ex. N at 1-2, 25-34. He further provided that if Mrs. Bettis disclaimed the right to receive any of the real property, the disclaimed property would be placed in a family trust. Id. at 2. The real property was divided between two lists attached to the will; the second list included property that Mr. Bettis owned in his name alone, and set forth legal descriptions of tracts identical to those in the deed produced by plaintiffs in conjunction with parcels 4385 and 4442. Id. at 29-34. In 1993, after Mr. Bettis died, Mrs. Bettis opted to disclaim the right to receive eleven parcels, which she identified, in part, by their tax parcel identification numbers ("PIN"). Pls.' Ex. O at 1-2. The PIN for one of the parcels was 3-15-1-12. Id. This PIN corresponds to the PIN set forth on the Property Card for parcel 4442. Pls.' Ex. G at 123. That Property Card, in turn, reflects (incorrectly) that Mr. Bettis owned the parcel as of March 15, 2016. Id. Thus, even though the Property Card does not reflect the conveyance of the parcel to the Gene Bettis Family Trust, such ownership is established through recorded estate documents. Thus, plaintiffs have satisfied their burden of establishing ownership of parcel 4442.

Turning to parcel 4385, the only possible tract in the deed produced by plaintiffs that could be this parcel is tract 12. See id. at 101-08. Tract 12 consists of three separately described tracts covering a total of 3.035 acres. Id. at 107. Unlike with tract 3, there is no statement that tract 12 is the identical property conveyed via a previously recorded instrument. Id. Rather, multiple deed books of the Cleveland County Registry, including "Deed Book 6-T, Page 304," are referenced as sources of title for the tract. Id. The sales history section of the Property Card for parcel 4385 reflects that the parcel was conveyed via an instrument recorded on page 304 of

deed book 6-T, which is only one of the deed books mentioned in the deed for tract 12. Id. at 99. Further, both the Property Card and Map Record indicate that the area of parcel 4385 is 3.5 acres, not 3.035 acres. Id. at 98-99. Thus, while it is possible, and perhaps probable, that tract 12 is parcel 4385, the evidence in the record does not unequivocally support that conclusion.[6] Thus, there is a genuine issue of material fact with respect to the ownership of parcel 4385.

In addition to the issue identified by defendant, the court observes that the property records produced by plaintiffs do not support their averment that the Hamrick S. R. Heirs own parcels 27799 and 49440. The Map Records and Property Cards for the two parcels reflect that the parcels have at least two owners: the Hamrick S. R. Heirs and Susan Baxter King. Id. at 183-85, 190-91. However, the deed referenced in those records and supplied by plaintiffs reflects that the parcels were conveyed to Ms. King in her individual capacity. Id. at 186-88, 192-94. In fact, Cleveland County recognized that this deed was a conveyance to Ms. King in her individual capacity with respect to a third parcel at issue in this case (27773). Id. at 202-07. Because there is a conflict in the supplied records regarding the Hamrick S. R. Heirs' ownership of parcels 27799 and 49440, the court cannot grant summary judgment to plaintiffs with respect to these two claims.

Finally, the property records produced by plaintiffs do not support their averment that Linda Kirby Owensby owns parcel 20865. The Map Record, Property Card, and deed for that parcel all reflect that the parcel is owned by Linda Kirby Bowen. See id. at 215-16, 218. Although it is likely that Ms. Owensby and Ms. Bowen are the same individual, an unsupported assumption is insufficient to establish the lack of a genuine issue of material fact. Thus, the court cannot grant summary judgment to plaintiffs with respect to this claim.

In sum, plaintiffs have established ownership of all of the parcels at issue on the date of the taking with the exception of parcels 4385, 20865, 27799, and 49440.[7]

### b. Adjacency

Plaintiffs further aver that each of their parcels is adjacent to the railroad right-of-way. A review of the maps in the Map Records submitted by plaintiffs reveals that thirteen parcels (3206, 3296, 4382, 4383, 4385, 4446, 4514, 4515, 20701, 20702, 47378, 50148, and 59617) are immediately adjacent to the railroad right-of-way along one entire boundary of the parcel;[8] two

---

[6] That Mrs. Bettis, upon the death of her husband, disclaimed receipt of a parcel with the same PIN as parcel 4385 (3-13-1-4), does not mean that the deed supplied by plaintiffs reflects a conveyance of parcel 4385 to Mr. Bettis in the first instance.

[7] Although not relevant to liability, the records produced by plaintiffs reflect that parcel 47378 is owned by Joseph M. Webb and Andrea L. Worley, a married couple, see Pls.' Ex. G at 265-66, 272, but Ms. Worley is not named as a plaintiff.

[8] However, the legal description of parcel 3296 set forth in the relevant deed, see Pls.' Ex. 13, does not match the depiction of the parcel's boundaries in the Map Record, see Pls.' Ex. G at 220. According to the deed, the railroad right-of-way does not run along one of the parcel's boundaries. Pls.' Ex. 13. Rather, a stake in the center of the railroad track is a point at which the

parcels (27799 and 49440) are severed by the railroad right-of-way; and two parcels (3165 and 71228) are immediately adjacent to the railroad right-of-way along most of one boundary of the parcel. For these seventeen parcels, plaintiffs have satisfied their burden of establishing adjacency.

The maps in the Map Records further reflect that eighteen of the remaining nineteen parcels (4345, 4347, 4348, 4399, 4404, 4406, 4441, 4442, 4504, 4584, 6308, 17851, 19599, 20863, 20865, 27773, 43846, and 44862) are separated from the railroad right-of-way by a public road. Plaintiffs contend that the intervening public road does not affect their ownership of the land underlying the railroad right-of-way. Although defendant has withdrawn its arguments that the intervening public road cuts off plaintiffs' interest in the railroad right-of-way, plaintiffs maintain the burden of establishing adjacency in the first instance.

North Carolina has codified the common-law presumption that owners of land adjacent to an abandoned railroad easement own to the centerline of the easement. See N.C. Gen. Stat. § 1-44.2; McDonald's Corp. v. Dwyer, 450 S.E.2d 888, 890-91 (N.C. 1994). However, pursuant to the statute codifying the presumption, North Carolina General Statutes section 1-44.2 ("section 1-44.2"), a different rule applies when the abandoned railroad easement adjoins a public road right-of-way. Section 1-44.2 provides:

> (a) Whenever a railroad abandons a railroad easement, all right, title and interest in the strip, piece or parcel of land constituting the abandoned easement shall be presumed to be vested in those persons, firms or corporations owning lots or parcels of land adjacent to the abandoned easement, with the presumptive ownership of each adjacent landowner extending to the centerline of the abandoned easement. In cases where the railroad easement adjoins a public road right-of-way, the adjacent property owner's right, title and interest in the abandoned railroad easement shall extend to the nearest edge of the public road right-of-way.
>
> . . . .
>
> (b) The presumption established by this section is rebuttable by showing that a party has good and valid title to the land.

In other words, an owner of a parcel adjacent to an abandoned railroad easement that itself adjoins a public road right-of-way presumptively owns to the near edge of the public road. Thus, in the example depicted in the figure below, the owner of Parcel A presumptively owns to the near edge of the public road right-of-way (in other words, all of the abandoned railroad easement), leaving the owner of Parcel B with no interest in the abandoned railroad easement. See also Love v. United States, 889 F. Supp. 1548, 1581 (E.D.N.C. 1994) ("Upon abandonment of railroad service, the land reverted to the adjacent landowners under both [section 1-44.2] and common law principles. The United States was an adjacent landowner at the time of this

---

northeast and southeast parcel boundaries meet. Id. This fact does not affect the liability analysis, but may affect the calculation of damages.

abandonment. Furthermore, since it is not disputed that a public highway bounded the property on the other side, the United States obtained the fee interest underlying the entire former right-of-way.").



However, if the public road right-of-way is wholly encompassed within the abandoned railroad easement, "the public road right-of-way [does] not adjoin the abandoned railroad easement and the second sentence of [section] 1-44.2(a) does not apply . . . ." Nelson v. Battle Forest Friends Meeting, 436 S.E.2d 122, 124 (N.C. 1993); see also id. at 125 ("[T]he definition of 'adjoin' does not include a tract which . . . is included within the bounds of another tract. To adjoin, a tract must be 'close to or in contact,' 'next to' or 'touching.'"). Consequently, the two adjacent landowners would each own to the centerline of the abandoned railroad easement pursuant to the first sentence of section 1-44.2(a). Id. at 125.

It cannot be disputed that all eighteen parcels in this group are akin to Parcel B in the figure above—separated from the railroad line by a public road. Thus, pursuant to the second sentence of section 1-44.2(a), if the public road right-of-way adjoins the railroad right-of-way, then whoever owns the property on the other side of the railroad right-of-way (the property akin to Parcel A in the figure) presumptively owns the entirety of the railroad right-of-way. However, for almost all of these parcels, the evidence submitted by the parties suggests, but does not definitively establish, that the public road is situated within the confines of the railroad right-of-way.

To reach this conclusion, the court first reviewed the deeds submitted by plaintiffs that reflect the original conveyances to one of Norfolk Southern's predecessors to determine the width of the railroad right-of-way. These deeds generally reflect that the railroad right-of-way is 100 feet wide (fifty feet from each side of the centerline).[9] Next, the court reviewed the GIS

---

[9] Many of the deeds explicitly granted a 100-foot-wide right-of-way. See Pls.' Ex. H at 9-11 (V/334), 15-17 (V/343), 18-20 (V/345), 21-23 (V/349), 26-28 (V/353), 29-31 (V/355), 32-34 (V/359), 35-37 (V/363), 38-40 (V/365), 41-43 (V/367), 44-46 (V/369); Pls.' Ex. L (V/351); Pls.' Ex. 8 (V/340); Pls.' Ex. 9 (V/342). Five of the deeds left the space for the width of the right-of-way blank. See Pls.' Ex. H at 7-8 (R/61); Pls.' Ex. K (X/338); Pls.' Ex. 6 (R/55); Pls.' Ex. 7 (R/57); Pls.' Ex. 10 (V¾/534). And two of the deeds did not mention a right-of-way width at all. See Pls.' Ex. H at 47-49 (V/521); Pls.' Ex. 11 (X/395). With respect to the latter seven deeds, at the time Norfolk Southern's predecessors acquired the right-of-way in the late 1880s, North Carolina law generally limited the width of railroad rights-of-way to 100 feet. See The Code of North Carolina, ch. 49, § 1957(4) (1883) (indicating that the General Assembly, during

maps supplied by defendant, see generally Def.'s Ex. 7, which depict the boundaries of the relevant parcels, and then, using the scales on those maps, determined whether it was possible that the public road was within the railroad right-of-way.

For the following seventeen parcels, the court determined that it was possible (and in some cases, quite likely) that at least a portion of the public road exists within all or part of the railroad right-of-way and therefore is not adjacent to the railroad right-of-way: 4345, 4347, 4348, 4399, 4404, 4406, 4441, 4442, 4504, 4584, 6308, 17851, 19599, 20863, 20865, 43846, and 44862. If the public road rights-of-way do, in fact, exist within the confines of the railroad right-of-way, then the owners of these parcels presumptively own to the centerline of the railroad right-of-way, see Nelson, 436 S.E.2d at 124-25, unless another party establishes "good and valid title to the land," N.C. Gen. Stat. § 1-44.2(b).

However, for one of the parcels (27773), the court determined that is was probable that the public road is adjacent to the railroad right-of-way. If so, then the owner of this parcel does not have any interest in the railroad right-of-way. See id. § 1-44.2(a).

In short, the proper application of section 1-44.2, as clarified by Nelson, might result in the conclusion that the plaintiffs who own seventeen of the parcels presumptively own to the centerline of the railroad right-of-way and that the plaintiff who owns the eighteenth parcel has no interest in the railroad right-of-way. However, because its method for ascertaining the location of the public road rights-of-way is necessarily imprecise, the court declines to grant summary judgment to plaintiffs or defendant on this issue. In other words, there is a genuine issue of material fact as to the property interest owned by the relevant plaintiffs. To prove that these plaintiffs presumptively own to the centerline of the railroad right-of-way, plaintiffs will need to marshal evidence establishing that the public road rights-of-way are, in fact, situated within the railroad right-of-way.

Finally, with respect to the last parcel at issue (3437), the evidence submitted by the parties raises two genuine issues of material fact. First, upon an examination of the map included in the Map Record, Pls.' Ex. G at 328, and the GIS map submitted by defendant, Def.'s

---

its 1871-1872 session, enacted a law providing that "[e]very railroad corporation shall have power . . . [t]o lay out its road not exceeding one hundred feet in width"). But see Battle's Revisal of the Public Statutes of North Carolina, ch. 99, § 29(4) (1873) (indicating that the General Assembly, during its 1871-1872 session, enacted a law—the same law described in the 1883 code—providing that "[e]very corporation formed under this chapter shall have power . . . [t]o lay out its road not exceeding twelve rods in width"); Hendrix v. S. Ry. Co., 77 S.E. 1001, 1004-05 (N.C. 1913) (holding that when a deed "conveys 'all right, title and claim to so much of our land as may be occupied by the said railroad, its banks, ditches and works,' . . . the right of way of the [railroad] is confined to the land occupied for its tracks, banks, ditches, and works, but that such occupation . . . may be extended from time to time, . . . not to exceed, however, the width of the right of way provided in its charter.").

Ex. 7 at 13,[10] it is unclear where Sulphur Springs Road actually terminates. There is an unpaved passageway situated between the parcel and the railroad right-of-way that could be an extension of Sulphur Springs Road (if the road makes a ninety-degree turn to the northeast) or a driveway.[11] If it is not a public road right-of-way, then the ownership of the underlying land is in question. Furthermore, it appears that the unpaved passageway is adjacent to, rather than within, the railroad right-of way, such that the owner of parcel 3437 does not have any interest in the railroad right-of-way pursuant to section 1-44.2(a). Due to these factual issues, summary judgment is not appropriate for plaintiffs or defendant.

To summarize, plaintiffs have established that seventeen parcels (3165, 3206, 3296, 4382, 4383, 4385, 4446, 4514, 4515, 20701, 20702, 27799, 47378, 49440, 50148, 59617, and 71228) are adjacent to the railroad right-of-way and are therefore entitled to summary judgment on this issue. However, plaintiffs have not established that the nineteen parcels affected by an intervening public road (3437, 4345, 4347, 4348, 4399, 4404, 4406, 4441, 4442, 4504, 4584, 6308, 17851, 19599, 20863, 20865, 27773, 43846, and 44862) are adjacent to the railroad right-of-way. Thus, neither party is entitled to summary judgment for these parcels on the issue of adjacency.[12]

### 2. The Property Interest Acquired by Norfolk Southern's Predecessors

In addition to proving that they owned parcels adjacent to the railroad right-of-way on the date of the taking, plaintiffs must establish that the interest acquired by Norfolk Southern's predecessors in the right-of-way was an easement, and that the scope of the easement did not include use as a recreational trail. In support of their contention that the right-of-way is a railroad-purposes easement, plaintiffs submit twenty late-nineteenth-century deeds that reflect the original conveyances to Norfolk Southern's predecessors.[13] Defendant agrees with plaintiffs that these deeds convey railroad-purposes easements, and the court, upon reviewing the deeds

---

[10] For citations to Defendant's Exhibit 7, which is not paginated, the court uses the page numbers assigned by its electronic case filing system.

[11] Based on the description of the parcel in the deed submitted by plaintiffs, the unpaved passageway may be situated on what was formerly known as Southern Avenue, which intersected with Borders Avenue (now Sulphur Springs Road). See Pls.' Ex. G at 158.

[12] Of note, the deeds through which plaintiffs acquired seventeen of these parcels did not expressly convey the land underlying the railroad right-of-way. However, for the other two parcels, the deeds supplied by plaintiffs are insufficient to make such a determination: (1) for parcel 4404, plaintiffs did not submit the correct deed (book 90E, page 282), see Pls.' Ex. G at 286-88; and (2) the deed for parcel 27773 does not contain a metes and bounds description of the land conveyed, see id. at 205-07. If the plaintiffs who own parcels 4404 and 27773 acquired the land underlying the railroad right-of way, then their parcels would satisfy the adjacency requirement.

[13] Plaintiffs submitted one other deed, but it does not pertain to the railroad right-of-way. Rather, it conveys lots adjacent to, or near, the right-of-way. See Pls.' Ex. H at 48 (V/521).

and the applicable North Carolina law, concurs with the parties.[14]  Accordingly, plaintiffs are entitled to summary judgment on this issue.

### 3. Linking Plaintiffs' Parcels to the Original Conveyances to Norfolk Southern's Predecessors

As the final step in establishing cognizable property interests, plaintiffs must demonstrate that their parcels underlie or are adjacent to a railroad-purposes easement acquired by one of Norfolk Southern's predecessors.  In their most recent status report, plaintiffs explain how they determined where each of their parcels was situated in relation to the easement originally conveyed to the railroad company.  Defendant reviewed this explanation and, as set forth in its responsive status report, determined that plaintiffs' parcels are associated with these original conveyances.  Accordingly, there is no genuine issue of material fact and plaintiffs are entitled to summary judgment on this issue.

### D. Liability for a Taking

In addition to establishing a cognizable property interest, a plaintiff in a Trails Act case must demonstrate that the Board's issuance of a NITU constituted a compensable taking of that interest.  Because a recreational trail is beyond the scope of a railroad-purposes easement under North Carolina law, see, e.g., Hodges, 45 S.E. at 576; BMJ of Charlotte, 675 S.E.2d at 71, a compensable taking occurs in North Carolina when the issuance of a NITU results in the conversion of a railroad-purposes easement into a recreational-trail easement.  In this case, the Board issued a NITU on August 4, 2015, and a trail-use agreement was executed on December 19, 2019.  Accordingly, plaintiffs have demonstrated that the NITU caused a permanent physical taking with respect to those parcels for which they have established cognizable property interests.

---

[14] Under North Carolina law, the task of ascertaining the nature of the property interest conveyed by these deeds is, like any other issue of deed construction, a question of law for the court.  Brown v. Hodges, 61 S.E.2d 603, 606 (N.C. 1950); Fisher v. Carolina S. R.R., 539 S.E.2d 337, 340 (N.C. Ct. App. 2000); Int'l Paper Co. v. Hufham, 345 S.E.2d 231, 233 (N.C. Ct. App. 1986).  Eighteen of the deeds grant the "right and privilege" to enter land "through which" the grantee railroad company "may desire to construct a Railroad," along with the right to lay out and construct the railroad.  See Pls.' Ex. H at 3-4 (R/55), 5-6 (R/57), 7-8 (R/61), 9-11 (V/334), 15-17 (V/343), 18-20 (V/345), 21-23 (V/349), 26-28 (V/353), 29-31 (V/355), 32-34 (V/359), 35-37 (V/363), 38-40 (V/365), 41-43 (V/367), 44-46 (V/369); Pls. Ex. K (V/338); Pls.' Ex. L (V/351); Pls.' Ex. 8 (V/340); Pls.' Ex. 9 (V/342).  The other two deeds grant the right and privilege to enter upon a right-of-way and to operate and repair the railroad on the right-of-way.  See Pls.' Ex. 10 (V¾/534); Pls.' Ex. 11 (X/395).  Deeds with such language convey easements.  See Fisher, 539 S.E.2d at 338, 340-41; Int'l Paper, 345 S.E.2d at 233-34.  Moreover, the plain language of the deeds reflects that the easements were limited to railroad purposes, and in North Carolina, a railroad-purposes easement does not include usage as a recreational trail.  See, e.g., Hodges v. W. Union Tel. Co., 45 S.E. 572, 576 (N.C. 1903); City of Charlotte v. BMJ of Charlotte, LLC, 675 S.E.2d 59, 71 (N.C. Ct. App. 2009).

### III.  CONCLUSION

In short, plaintiffs have not satisfied their burden of establishing that they have cognizable property interests with respect to twenty-two of the thirty-six parcels at issue. Specifically, they have not shown that, on the date of the taking, the identified plaintiffs actually owned parcels 4385, 20865, 27799, 49440.[15]  And, they have not demonstrated adjacency to the railroad right-of-way for parcels 3437, 4345, 4347, 4348, 4399, 4404, 4406, 4441, 4442, 4504, 4584, 6308, 17851, 19599, 20863, 20865, 27773, 43846, and 44862.  For the remaining fourteen parcels (3165, 3206, 3296, 4382, 4383, 4446, 4514, 4515, 20701, 20702, 47378, 50148, 59617, and 71228), plaintiffs have established a Fifth Amendment taking for which defendant is liable to pay just compensation.  Accordingly, the court **GRANTS IN PART** and **DENIES IN PART** plaintiffs' motion for summary judgment and **DENIES** defendant's cross-motion for summary judgment.

The parties shall file a joint status report **no later than Friday, April 30, 2021**, to advise the court whether they will be able to reach stipulations with respect to the remaining threshold issues and to propose a schedule for further proceedings.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Senior Judge

---

[15]  The court anticipates that it will not be difficult for plaintiffs to produce evidence to establish ownership of these parcels, whether it be conveyance schedules similar to those it produced in relation to parcels 4404 and 4504, see Pls.' Ex. G at 289; Pls.' Ex. M; sworn declarations; or other documentation.